BENEDICT et al. v. CARGO OF 6,086 RAILROAD TIES.

(District Court, S. D. New York. February 6, 1907.)

SHIPPING—VERBAL CHARTER—SUIT FOR DEMURRAGE.

Evidence considered, in suit by a vessel owner for demurrage under a verbal charter, and *held* insufficient to sustain the libelants' claim that quick dispatch was agreed upon, or to render the charterer liable; it appearing that he was not in fault for the delay in loading.

In Admiralty. Suit for demurrage.

Alexander & Ash, for libellants.

James J. Macklin, for claimant.

ADAMS, District Judge. This action was brought by Frank W. Benedict and others, the owners of the schooner George R. Vreeland to recover demurrage on the said schooner for a period of twenty-three

days, during which it is alleged she was detained at Richmond, Virginia, in February and March, 1902. A load of railroad ties was the cargo intended to be transported from Richmond to Elizabethport, New Jersey, for the charterer. The basis of the claim is an alleged verbal charter of the vessel wherein it was agreed that the charterer should give good despatch in loading and a violation of the contract by detaining the schooner at the loading port the number of days specified. The defence is that the master knew the loading place was a slow one and he took the chance of getting despatch; that it was by no fault of the charterer that the vessel was delayed.

This is one of those difficult cases with which the court is troubled at times, depending altogether upon contradictory verbal testimony. There have been some few papers put in evidence but nothing that will aid in determining the controversy.

The libellants' case depends upon the testimony of the master of the vessel, who said that Mr. Richardson, with whom he made the charter, told him, when it was made, that he would give good despatch in loading and in another place the master said "quick" despatch and at the same time gave him a letter, as follows:

"Jan'y 28th, 1902

Mess. White Hall Company
    P. O. Dillwyn, Buckingham Co. Va
    Telegram address 'Arvonia' Va.

D'Sir: You will please load the Sch. George R. Vreeland, Captn. Frank Vaughn, with cargo of Oak ties 8½ feet long—at C & O Docks—Freight .15¢ fifteen cents per tie.
    Yr. truly                     W. P. Richardson."

Mr. Richardson testified that he was a wholesale dealer in railroad ties in New York and that in the month of January, 1902, Captain Vaughn asked him for a load of railroad ties and he said he would let him have one, to stop in the office some day and he would give him a cargo from Richmond; that the next conversation took place in a store in New York and part of it was as follows:

"Q What was said by either of you? A He came in and said he would like to have a cargo of ties, and I said the freight was 15 cents, and to load at the Chesapeake & Ohio docks at Richmond, Virginia for Elizabethport, New Jersey. He had had a previous cargo from me to that port, and knew he had quick dispatch in unloading; I said 'I will not give you any charter party for these ties; it is a slow place to load; I have had my own vessels running there for years, and they have been slow there.' He took that order for 15 cents per tie, without any charter party or any word about quick dispatch mentioned by me.

Q What did he say when you told him it was a slow place? A He took the order; freights were very dull and he was glad to get the order.

Q Did you say anything about dispatch? A Not a word, except that he would go there and load.

Q Did you say anything about demurrage? A No sir, not a word.

Q What did you say as to whether he would have to wait? A I told him I would do all I could to have the ties down there by the time he arrived.

Q Did you give anything in writing, except the order? A No sir."

Mr. Richardson then gave him the above letter, dated January 28th, 1902.

368

The testimony of Mr. Richardson was confirmed by a Mr. Schlaefer, a bookkeeper in his employ, who said as follows:

"Q Tell us what you heard said. A The captain asked Mr. Richardson for a freight, and asked him if he had any, and Mr. Richardson said 'Yes, I have a cargo of ties to come off from Richmond, Virginia; I will give you fifteen cents freight on these ties without a charter party; I will give you the order whenever you want it.'

Q What else was said, if anything? A Nothing very much more than, I think, some few days after that Captain Vaughn came in and got the order.

Q Anything said about where he was to receive the railroad ties; from what dock? A No sir.

Q From the Chesapeake & Ohio? A Oh yes, from the Chesapeake & Ohio Railroad dock, yes.

Q What was said about that? A Mr. Richardson told him that it was a slow place, as everybody knew, and consequently he wouldn't give him any charter party, but he would give him fifteen cents freight whenever he liked; and whenever he felt like accepting the order to come in there and he would give it to him.

Q Who prepared this written direction order? A Mr. Richardson.

Q Did you see that handed to the captain? A Yes sir.

Q Do you know whether Sullivan's name was mentioned at all at any of these interviews? A No sir.

Q It was not mentioned. A It was not mentioned at all.

Q Did Mr. Richardson say that he would give the schooner quick or good dispatch, or anything of that sort? A No sir.

Q Did the captain mention that to him? A No sir; there was no mention of that at all."

The preponderance of evidence is decidedly with the claimant here, especially as the cross-examination of the master tended to discredit his account of the matter. He there said:

"Q What was said by either you or Mr. Richardson at the first interview you had with regard to your vessel going to Richmond? A Well, I can't say what was said, I couldn't say about that; he said he would give me a load of ties.

Q Tell us what was said at the second interview? A He chartered me and said he would give me a load of ties and to go to Richmond.

Q Is that all? A That's all that I know.

Q Didn't he say that he would not sign a charter party in writing? A I don't recollect, I don't think I asked.

Q Do you remember that Mr. Richardson told you he would not sign a charter party? A No, sir, I don't remember anything about a charter party."

\*     \*     \*     \*     \*     \*     \*     \*     \*

"Q When was it he gave you the written order to go after this load? A I think it was somewhere about the 12th of December, somewheres along there.

Q Nothing said about demurrage at all or loading of the vessel, except that you were to receive a load, is that it? A Nothing said about demurrage.

Q The freight was mentioned, wasn't it? A Yes, sir."

Upon the whole I conclude that the libellants have not established a case.

Libel dismissed.